**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**SILER DRUG STORE COMPANY, Inc.,**
**Perry H. Siler and James Sutton,**
**Defendants-Appellants.**

**No. 17009.**

United States Court of Appeals
Sixth Circuit.

March 29, 1967.

William S. Tribell, Pineville, Ky., for appellants.

Moss Noble, Lexington, Ky., for appellee, George I. Cline, U. S. Atty., Lexington, Ky., on the brief.

Before McCREE, Circuit Judge, McALLISTER, Senior Circuit Judge, and WEINMAN, District Judge.[*]

PER CURIAM.

The corporate defendant, its president and an employee were found guilty of the offense of selling legend drugs without prescription in violation of 21 U.S.C. 353

(b) (1) and 21 U.S.C. 331(k). The corporation and its president were convicted on ten counts, the employee on eight. The corporation was fined $500 on each count, and each individual defendant was sentenced to one year in prison on each count, to be served concurrently.

As grounds for reversal, defendants contend that the trial court abused its discretion in not granting a continuance, that improper cross-examination was permitted, and that it was improper to hold both the corporation and its officer liable for the acts of the employee.

Upon consideration, we find these contentions to be without merit, and we therefore affirm the decision of the trial court.

Attention of counsel is directed to Rule 35, Federal Rules of Criminal Procedure, with regard to the power of the trial court to effect a reduction in sentence. See also *United States v. West Coast News Company*, 6 Cir. (1966), 357 F.2d 855 at 865.

McALLISTER, Senior Circuit Judge.

I concur, without qualification, in the accompanying per curiam opinion, but, because of certain disquieting aspects of the case, consider it proper to express a personal view with respect to the nature of the proofs, and the applicable law.

Mr. Perry H. Siler, the owner of Siler Drug Company, Inc., appealed from a judgment of conviction of violation of Title 21 U.S.C.A. § 353, for dispensing certain drugs without a doctor's prescription. In addition to Mr. Siler, James Sutton, an employee of the company, and the company itself, a corporation, appealed from the judgment.

Mr. Siler testified that he sold a tranquilizing drug to a government agent who represented himself to be a doctor, and who signed the prescription. Under the signature of the government agent were the printed letters "M.D." The signature was "Mr. Robert Engle," an assumed name that the agent used in trying to se-

[*] The Honorable Carl A. Weinman, Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

cure illegal sales of drugs. The agent stated to Mr. Siler that the drug was for the use of his grandmother, giving her address. Why an undercover agent of the Government would sign a prescription as "M.D." in order to secure an illegal sale of a drug from Mr. Siler in order to use it for a criminal conviction is disturbing, and savors of unfair and discreditable practices.

From the evidence it appears clear that Mr. Siler would not have sold the drug, a tranquilizer, if the agent had not signed the prescription. I have in mind, of course, the fact that the agent denied he stated to Mr. Siler that he was a physician. But it seems unduly strange that the agent signed the prescription to procure an illegal sale of the drug, if it was not to mislead Mr. Siler. It seems a rather thin explanation to say that a government agent would sign the prescription as an M.D. merely because Mr. Siler told him to do so; and this particular agent, who was trying to secure a sale of the drug without a prescription, testified that he was not familiar, in the course of his employment, with a prescription form, and that he had not even noticed, when he signed the prescription, that it had the letters "M. D." printed on the form immediately after the line where he had signed his name. This appears unbelievable; but the jury is the judge of the credibility of the witnesses.

When a group of agents, afterward, came to see Mr. Siler to inform him that they had evidence that he was illegally dispensing prescription drugs, he went into the "dispensing area" and returned, saying to the agent who had signed the prescription: "You posed as a doctor." One of the agents then asked Mr. Siler if they could trace the form—meaning the prescription which the agent had signed. In response, Mr. Siler produced the signed prescription form and let them take it in their hands to examine, saying: "Boys, don't mark or mutilate this in any way or you won't make it to the front door. Don't do it, boys." At the time, Mr. Siler had a revolver in the prescription drawer. He stated he kept it there because he had been the victim of several holdups during the preceding four years. Mr. Siler's threat was mentioned in criticism of him by the trial judge at the time he passed sentence, as intimidating the federal agents; and, of course, any law-abiding citizen would agree that Mr. Siler would have had no right to take the law into his own hands, or threaten to kill anyone who removed the signed prescription from his possession. However, what the incident reveals is the importance that the group of agents attached to seeing, for the first time, the prescription form signed by the undercover agent, and, also, the importance attached by Mr. Siler to this signed prescription as proof of his innocence. Nevertheless, in spite of doubt, there was enough in the evidence adduced by the Government to carry the case to the jury.

In United States v. Dotterweich, 320 U.S. 277, 284, 285, 64 S.Ct. 134, 138, 88 L.Ed. 48, the Court, in a five to four opinion, speaking through Mr. Justice Frankfurter, said, in discussing the penalties provided by the Food and Drug Act:

"Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are wholly helpless.

" * * * To attempt a formula embracing the variety of conduct whereby persons may responsibly contribute in furthering a transaction forbidden by an Act of Congress, to wit, to send illicit goods across state lines, would be mischievous futility. In such matters the good sense of prosecutors, the wise guidance of trial judges, and the ultimate judgment of juries must be trusted."

Mr. Justice Murphy, writing the dissenting opinion, said that "it is significant that this Court has never held the imposition of liability on a corporation sufficient, without more, to extend liability to its officers who have no consciousness of wrongdoing."

In the *Dotterweich* case, the Supreme Court, through its majority opinion, reversed the judgment of the United States Court of Appeals for the Second Circuit, in which Judge Learned Hand and Judge Chase stood for reversal of a judgment of conviction, while Judge Swan dissented.

James Sutton, the clerk of Mr. Siler, was convicted, as well as the corporation. Under the rule in the *Dotterweich* case, Mr. Siler, even though he might have had no consciousness of any wrongdoing by his clerk and might have known nothing whatever of his actions, was subject to liability for such wrongdoing, including the comparatively heavy penalty of imprisonment for a year, and the payment of a fine of $5,000 levied against his company. Mr. Sutton was also sentenced to a year's imprisonment.

The fact that Mr. Siler could be convicted as the result of a violation of law by his clerk, although Mr. Siler knew nothing of it, may have weighed in the minds of the jury in their consideration of Mr. Siler's innocence or guilt on the charge that he had knowingly violated the law in filling the prescription signed by the undercover agent. If the jury had found him innocent of that charge, they might have found him innocent of all charges. If the undercover agent had not signed the prescription, the probability is that Mr. Siler would not have filled it, and, accordingly, there would have occurred no threat when the agents took the prescription form in their hands to examine it. The recommendations for fine and sentences of imprisonment were made by the Government partly because of "the possible intimidation of government employees."

There may be other considerations which we have not here mentioned, that weighed with the trial judge in arriving at the sentences which he imposed. In case of an application to effect a reduction of sentence, all of these matters are for the sole determination of the trial judge. His determination arises out of a somewhat unusual obligation. As the Supreme Court, in an unusual pronouncement in the *Dotterweich* case, declared, in such matters as prosecutions under the Food and Drug Act, the wise guidance of the trial judge is one of the elements that must be trusted in avoiding undue hardship.